ant's attorney to explain this item and it is beyond our comprehension to understand how a man can make money out of boarding his own children, or, in fact, out of other persons, if they do not pay board. But, notwithstanding this and several other missteps, we do not think the commission deviated materially from the correct theory in attempting to compute the profits of the business. We are not so much impressed by the errors into which the commission fell as by the unsatisfactory character of the evidence on which the award is based.

We have not undertaken to figure out the exact amount which we think should have been awarded to the claimant, for we disagree with the appellant's counsel when he says that the matter "is simply an arithmetical one." It does not in our opinion reduce itself to a question of arithmetic. If we were able to separate the figures that are absolutely reliable from those which are wholly incredible, it might be possible to figure the award out to a mathematical certainty; but our examination of the record convinces us that this cannot be done. We are persuaded, however, that the claimant did have an established boarding house and livery business from which he was making a substantial profit before it was interrupted by the Ashokan acqueduct. This business seems to have been very considerably injured, if not destroyed, by the city of New York, and we think justice would be substantially meted out to both litigants if the claimant were given $1,000.

Therefore in view of the uncertainty in the evidence, and the impossibility of making a definite computation, we direct that the order be reversed, as against the weight of evidence, and a new trial granted before some commission, other than the one before which this trial was had, unless the claimant consents to accept $1,000, in which event the order as so modified should be affirmed, without costs. The court disapproves of the finding that the damages were $2,819.30. All concur, COCHRANE, J., in result.

---

### CLIMAX ROAD MACH. CO. v. CENTRAL BANK OF MEDINA.

(Supreme Court, Appellate Division, Third Department. January 5, 1916.)

1. VENUE ☞52—CHANGE OF VENUE—CONVENIENCE OF WITNESSES.

In an action by a road machine company, which had sold a steam road roller to a contractor, which, after the contractor's insolvency, was claimed by defendant bank under a chattel mortgage, where the issues as made by the complaint were that the contractor obtained the roller by false representations, that its firm was then insolvent, that the defendant, with knowledge of the contractor's insolvency, conspired with it in the fraudulent acts, that before its action plaintiff had disaffirmed the sale and demanded the property from defendant, which had refused to surrender it, and as to the value of the property, it appeared on motion to change the place of trial from Cortland county to Orleans county that 25 of the defendant's material and necessary witnesses resided in Orleans county, and that those residing outside of that county were residents of other counties, and that the letters received by the firm from plaintiff

and copies of the answers thereto, as well as the books and papers of the firm were in the possession of its trustee in bankruptcy in Orleans county, and it appeared from the answering affidavits that, of 5 of plaintiff's necessary and material witnesses, 4 resided in Orleans county, and if the trial should be had in that county plaintiff would stipulate certain concessions not fully covering the important issues, and that the sale and the conversion occurred in Orleans county.   *Held*, that the defendant was entitled to an order for trial in Orleans county.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 76, 77; Dec. Dig. ☛52.]

2. Jury ☛31—Compulsory Reference—Issues for Jury.

In such case, the defendant was entitled to a jury trial of the issues, and should not be forced to submit to a reference.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 204–219; Dec. Dig. ☛31.]

Howard, J., dissenting.

Appeal from Special Term, Cortland County.

Action by the Climax Road Machine Company against the Central Bank of Medina. From a judgment denying defendant's motion to change the place of trial from the county of Cortland to the county of Orleans, unless defendant should consent to a reference of the action, which it declined, defendant appeals. Order reversed, and motion granted.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Ryan & Skinner, of Medina (John J. Ryan, of Medina, of counsel), for appellant.

Kellogg & Van Hoesen, of Cortland (D. W. Van Hoesen, of Cortland, of counsel), for respondent.

LYON, J.   The plaintiff is a manufacturer of steam road rollers and stone crushers at Marathon, N. Y.; the defendant is a state bank located at Medina, N. Y.; and the firm of Malcolm & Son were in the summer of 1914 general contractors, located at Medina and engaged in carrying out several contracts at that place and in that vicinity.   The complaint alleges that in the month of June, 1914, and for a long time prior and subsequent thereto, Malcolm & Son, who were indebted to the defendants in a large amount, were insolvent to the knowledge of themselves as well as of the defendant; that the defendant conspired with said firm to get said indebtedness paid, or to secure a preference over the other creditors of said firm, and to that end the defendant took assignments to itself of all the contracts and choses in action of the firm, and also took a chattel mortgage upon all the personal property and equipment of the firm, and in pursuance of said conspiracy and in order to conceal the financial condition and insolvency of the firm, and to maintain the credit of the firm so that it might be able to purchase more property and equipment on credit and use the same to secure the indebtedness of said firm to the defendant, the defendant refrained from filing its said chattel mortgage, and kept the same from record and concealed the same.

☛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The complaint also alleges that in pursuance of said plan and conspiracy, and for the purpose of deceiving and defrauding the plaintiff and inducing it to sell said firm a steam road roller and stone crusher, with elevator, screen, and other attachments, with the intent that said firm should turn them over to the defendant in part payment of or as security for the indebtedness of said firm to defendant, said firm falsely and fraudulently of its knowledge stated to the plaintiff that said firm was solvent and had large and profitable contracts upon which large sums of money were soon to become due and payable, concealing its real financial condition, its insolvency, its said assignment of its contracts, and the mortgaging of its equipment and personal property to the defendant, and that by color and aid of said false and fraudulent representations and concealments, said firm obtained said crusher and roller, and immediately thereafter in pursuance of said fraudulent plan and conspiracy, and before the crusher and roller had been used by said firm, executed a chattel mortgage thereon to the defendant to secure its said indebtedness to the defendant, and soon thereafter failed and went into bankruptcy, without having paid the plaintiff any part of the purchase price of the crusher and roller.

The complaint also alleges that upon learning of the insolvent condition of said firm and of the fraud practiced upon it, the plaintiff disaffirmed said sale and demanded said property of said firm, and of its trustee in bankruptcy, and of the defendant, which property the defendant has since taken under its chattel mortgage, as well as purchased of the trustee in bankruptcy, and claims to own, and has refused to deliver to the plaintiff upon demand duly made, and has wrongfully converted to its own use, to the plaintiff's damage in the sum of $2,550.

The answer denies all allegations of misrepresentation, fraud, and conspiracy, as well as that the plaintiff ever disaffirmed the sale of the property, or demanded it of said firm, or of the trustee in bankruptcy, or of the defendant. Further, the answer alleges that said firm was the bona fide owner of said roller and crusher, with attachments, having purchased them from the plaintiff in the latter part of the year 1913 or the early part of the year 1914, paying therefor in part by the exchange of other machinery with plaintiff, by the payment of a portion of the purchase price in cash, and by giving the plaintiff the promissory note of the firm for $1,000 which the plaintiff accepted and retained; that the plaintiff has not returned or offered to return to the said firm or to its trustee in bankruptcy said note or the purchase money so paid, or any part of the machinery so given in exchange, but has retained all of the same.

The answer further alleges that in July, 1914, said firm executed and delivered to the defendant a chattel mortgage upon certain of its personal property, including said roller and crusher, with its attachments, as collateral security for the sum of $15,000, which mortgage the defendant caused to be duly filed, and thereby acquired a valid lien for a good and valuable consideration, in due course of business, without fraud or wrongdoing, or intent to hinder or delay creditors, or notice of any alleged fraud or wrongdoing on the part of said firm, or of any claims of the plaintiff in and to the roller and crusher.

The answer also alleges that by reason of the stringency of the money market, caused by the European war, said firm was unable to obtain the necessary money for carrying on several large public contracts, and was thereby, in September, 1914, forced into bankruptcy; a receiver and later a trustee being duly appointed, under the latter of whom, through a public sale at auction, the defendant being the highest bidder for the roller and the crusher, with its attachments, became the bona fide owner and holder thereof.

[1] The following material allegations of the complaint, denied by the answer, will constitute issues upon the trial:

I. That said firm obtained said property from the plaintiff by means of false representations.

II. That said firm was insolvent at the times stated.

III. That the defendant, with knowledge of the insolvency of the firm, entered into the alleged conspiracy with the firm, and together were parties to the fraudulent acts complained of.

IV. That prior to bringing this action the plaintiff disaffirmed the sale, and demanded the property from the defendant, as well as from the trustee in bankruptcy, and that the surrender thereof to the plaintiff was refused.

V. The value of the property.

In the moving affidavits the defendant has named some 25 persons as material and necessary witnesses for it upon the trial of this action, nearly all of whom reside at Medina, and only 4 of whom reside outside of Orleans county; 3 of these being residents of Erie county, and 1 of Niagara county. These witnesses include the president, cashier, and the other 5 directors of the defendant, by whom, concisely stated, the defendant expects to prove that at the time of making loans to said firm said board carefully investigated as to its financial responsibility, obtained the statements of said firm, both oral and written, as to its financial condition, and that at no time did any of the directors of the defendant receive information that said firm was unable to pay its debts; that there was not at any time any conspiracy or wrongful action of any kind, and no intent to hinder, delay, or defraud any of the creditors of said firm, upon the part of any of the officers of the defendant, or any purpose upon the part of the defendant that said firm should acquire the roller and crusher of the plaintiff, with the intent that they should form additional security to defendant, but that the taking of said chattel mortgage and the assignment of moneys to become due upon contracts were taken in the utmost good faith, in due course of business, in consideration of large loans made by the defendant to said firm to enable it to meet its pay rolls, purchase machinery and materials, and carry on a large number of important contracts, and without any information upon the part of the defendant or of any of its officers that the plaintiff claimed any interest in said roller and crusher and attachments. Three of the other witnesses named by the defendant are stated to be officers of two neighboring banks, which, after making investigations as to the financial standing of said firm, made loans of money to it, at the time the defendant made loans and took said chattel mortgage and other

securities, by whom the defendant states that it expects to prove that said firm at these times had abundant property with which to pay its debts, and was in a solvent condition down to about August 1, 1914, when its insolvency resulted from the stringency of the money market, brought on by the European war. Five of the other witnesses are stated to have had charge for the contractees, respectively, of five contracts being performed by said firm, by whom the defendant states that it expects to prove that such contracts were large and profitable contracts to said firm, one for the construction of a portion of the barge canal through the village of Medina, amounting to upwards of $1,000,000, from each of which contracts said firm was receiving large sums of money, and that each of such persons during the period of the making of said loans by defendant investigated as to the financial responsibility of said firm, and believed it to be financially responsible; also as to the amounts and profits of said contracts. Two of the other witnesses named are the trustee in bankruptcy and his attorney, by whom the defendant states that it expects to prove that no demand for said property has been made by the plaintiff, and that no offer has been made by the plaintiff to return any part of the consideration received therefor; and by three other witnesses named that they were the appraisers in bankruptcy of the property of said firm, and are acquainted with the value of the property claimed by the plaintiff, and that the value thereof was very much less than the sum named in the complaint. Of the other witnesses named, one is stated to have been the bookkeeper of said firm for some time prior to its bankruptcy, by whom the defendant expects to prove that during the period in question said firm had large and profitable contracts and an adequate plant for handling its work, from which it was receiving large sums of money, and that it was in no way financially embarrassed down to the time of the European war, when further loans were refused the firm with which to carry on its contracts.

The defendant also states that the letters received by said firm from the plaintiff, and copies of the answers thereto, as well as all the books and papers of said firm, are in the possession of the trustee in bankruptcy at Medina.

The answering affidavits name five persons as necessary and material witnesses for the plaintiff upon the trial of the action, four of whom reside in Cortland county, N. Y., and one in the adjoining county of Tompkins.

Concisely stated, the facts which the plaintiff alleges that he expects to prove by three of said witnesses are that they were the only persons who were present and participated with the two members of said firm in the negotiations leading up to the alleged sale by the plaintiff to said firm of the roller and crusher with attachments, and that the roller was leased and not sold, and that the members of said firm made to said witnesses certain statements and representations as to their financial responsibility, and as to the contracts which they then had and expected to secure, and as to the money which they would receive, and the profits which they would make therefrom; by three of said witnesses that they were present at the hearings before the

referee in bankruptcy, and made the claim that title to the property had never passed to said firm; by one of said witnesses that prior to the commencement of the action he demanded of the defendant the said property, the plaintiff claiming to own the same, which the defendant refused to deliver (this fact the defendant in its replying affidavit offers to concede in case the place of trial shall be changed to Orleans county); by two of said witnesses that one of the members of said firm made statements and admissions to them which will constitute material evidence upon the trial; by the president of the plaintiff that, upon learning of the falsity of the representations made by the members of the firm, the plaintiff disaffirmed the sale of the crusher, with the attachments, of which he gave due notice to said firm, its creditors, and said trustee in bankruptcy, and that the plaintiff has not received anything whatever to apply upon the purchase price of the property. The plaintiff states that it expects to prove by documentary evidence only the falsity of said statements and misrepresentations made by the members of said firm, as well as the fraud and conspiracy alleged in the complaint.

In addition to affidavits, the plaintiff has filed, in opposition to the motion to change the place of trial, a stipulation to make certain concessions, 21 in number, upon the trial of the action, in case the place of trial shall remain in Cortland county. A careful examination of the stipulation proves, as contended by the defendant, that it does not fully cover the important issues. Furthermore, in a case of this character, the testimony of witnesses given in the presence of the jury is much more likely to result in a just and intelligent verdict.

It is apparently conceded that both members of the firm of Malcolm & Son have removed to Baltimore, Md.

As to the place of the transaction: While it is stated on behalf of the plaintiff "that part of said negotiations occurred at Medina, N. Y., and part at Marathon, N. Y.," what part occurred at the latter place is not stated. Upon the other hand, an affidavit submitted by the defendant states that, while the roller was first leased under an option to purchase, an absolute sale was thereafter made to said firm of both the roller and crusher, with attachments, at the office of the firm in Medina, N. Y. This position as to the roller seems to be borne out by the statement in a letter from the plaintiff, of date October 21, 1913, now claimed to be in the possession of the attorney for the trustee in bankruptcy, as follows:

"We presume that you are somewhat surprised that you have not heard from us before in relation to the Monarch roller, that we made a deal with you for, when the writer was at your place, with our Mr. Lupton on October 7th. On my way home from Rochester I stopped at Groton on the 8th, and arranged with the Groton people to send a man to Albany to inspect the two rollers that we had in that vicinity, and, if either of them are in good condition, to ship same at once to you at Middleport, N. Y. * * * The roller was shipped on the 16th inst., and we hope it has been received by you before this time."

The affidavit also states that said correspondence further shows that the sale of the crusher was also made in Orleans county. The alleged conversion also occurred at Medina.

[2] While the order appealed from recites that "the court having decided that the said motion to change the place of trial herein be denied, unless the defendant's attorneys consent within ten days that this action be referred to a referee to hear and determine the same, and the attorneys for the defendant having declined to consent to such reference and having filed their written declination so to consent," such declination should in no way influence the action of the court upon this appeal. The defendant is entitled to a jury trial of the issues, and should not be forced to submit to a reference.

The order appealed from must be reversed, with $10 costs and disbursements, and the motion changing the place of trial from the county of Cortland to the county of Orleans granted, with $10 costs to appellant to abide the event. All concur, except HOWARD, J., who dissents.